IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **BIRMINGHAM EMERGENCY COMMUNICATIONS DISTRICT,** ) ) ) | |
| **Plaintiff,** ) ) | |
| v. ) ) | Case No. 2:17-cv-00395-RDP |
| **BANDWIDTH.COM, INC., et al.,** ) ) | |
| **Defendants.** ) ) | |

### MEMORANDUM OPINION

This matter is before the court on Defendants' Partial Motion to Dismiss Count I of Plaintiff's Complaint. (Doc. # 11). The Motion is fully briefed. (Docs. # 11, 15, 16). For the reasons explained below, the Motion is due to be granted.

**I. Background**[1]

The Emergency Telephone Services Act ("ETSA"),[2] Ala. Code § 11-98-1 *et seq.*, established 911 as the statewide emergency telephone number and created Emergency Communication Districts ("ECDs") in order to form local emergency telephone services ("911 services"). (Docs. # 1 at ¶ 11; 11 at p. 2). Prior to October 1, 2013, the ETSA authorized municipalities and counties to assess charges on exchange access lines and Voice over Internet Protocol ("VoIP") telephone services ("911 charges") in order to fund the ECDs' 911 services.

---

[1] "A Rule 12(b)(6) motion questions the legal sufficiency of a complaint; therefore, in assessing the merit of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true." *Mays v. U.S. Postal Serv.*, 928 F. Supp. 1552, 1557-58 (M.D. Ala. 1996). Thus, for the purpose of resolving Defendants' Partial Motion to Dismiss (Doc. # 11), the court treats the facts alleged in the Complaint (Doc. # 1) as true.

[2] The ETSA was amended in 2012 (effective October 1, 2013); however, this case involves events occurring prior to October 1, 2013. (Doc. # 1 at ¶ 16). Accordingly, the court only refers to and considers the pre-amendment version of the ETSA.

(Docs. # 1 at ¶ 2, 11; 11 at p. 2). Birmingham Emergency Communication District (the "District") is an ECD that provides 911 services throughout Birmingham, Alabama. (Doc. # 1 at ¶ 1). Defendants Bandwidth.com, Inc. and Bandwidth.com CLEC, LLC (collectively "Defendants" or "Bandwidth") sell both wholesale and retail telecommunication services and provide business telephone services through VoIP services. (Docs. # 1 at ¶ 3; 11 at p. 1).

The District filed this action against Bandwidth on March 13, 2017, alleging (1) violation of the ETSA, (2) negligence / negligence *per se* / gross negligence / recklessness, (3) breach of fiduciary duty, (4) wantonness, and (5) misrepresentation / fraud. (Doc. # 1). Specifically, Plaintiff alleges that Bandwidth failed to bill, collect, and remit 911 charges in accordance with the ETSA, causing Plaintiff to suffer substantial financial loss. (*Id.* at ¶ 16-17, 26-27). On May 31, 2017, Bandwidth moved to dismiss Count I (violation of the ETSA) to the extent that the District seeks to impose liability on Bandwidth as a wholesaler and not in connection with Bandwidth's retail business. (Doc. # 11).

Plaintiff has filed similar actions in this district against other telecommunications providers and in those actions has asserted similar claims. *See Birmingham Emergency Commc'ns Dist. v. TW Telecom Holdings, Inc., et al.*, 2:15-cv-00245-AKK; *Birmingham Emergency Commc'ns Dist. v. Level 3 Commc'ns, LLC, et al.*, 2:15-cv-01088-AKK. On March 3, 2017, Judge Kallon of the Northern District of Alabama analyzed the merits of a motion to dismiss that involved the District's allegation that Level 3 Communications, LLC and Level 3 Communications, Inc. (collectively "Level 3") violated the ETSA. *See* Doc. # 25, *Birmingham Emergency Commc'ns Dist. v. Level 3 Commc'ns, LLC, et al.*, 2:15-cv-01088-AKK. In its motion to dismiss, Level 3 argued that the District's ETSA claim was due to be dismissed

because Level 3 provided wholesale services. *See id.* at p. 5. However, the issue was deemed moot for the following reason:

> Level 3 first asserts that the District's claims for violations of the ETSA based on Level 3's provision of wholesale services fails as a matter of law, because the ETSA "imposes the obligation to bill, collect, and remit on the service supplier that provides the service to the end-user, thereby making it inapplicable to wholesale service suppliers that have no relationship with end-users." Doc. 14 at 4-5. As it relates to the wholesale service suppliers, the District does not challenge Level 3's contention, and concedes that "[it] is <u>not</u> alleging that the Defendants had a duty to bill, collect, and remit 911 charges on telephone numbers or lines that the Defendants provided, on a wholesale basis, to resellers." Doc. 16 at 6 (emphasis by plaintiff). Therefore, because the District has clarified that it is only pursuing claims related to Level 3's failure to remit 911 Charges for the retail services Level 3 provides directly to service users, Level 3's motion, as it relates to the provision of wholesale services, is moot.

*See id.* at p. 5-6. Defendants allege that Plaintiff has already conceded that no ETSA liability attaches to the provision of wholesale telecommunications services. (Doc. # 11 at p. 5-6). Plaintiff counters that this case is distinguishable from the District's case against Level 3 because the Complaint against Bandwidth "contains an allegation that does not appear in the Level 3 case, namely that 'during the relevant time period, the Defendant did not contractually require its reseller customers to pay 911 charges directly to the District and other 911 districts.'" (Doc. # 15 at p. 5 (citing Doc. # 1 ¶ 19)).

**II. Standard of Review**

The Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that

3

contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l. Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Candield, Paddock & Stone, PLC*, 413 Fed. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Assn. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Twombly*, 550 U.S. at 556. Further, "courts may infer from the

factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental*, 605 F.3d at 1290 (quoting *Iqbal*, 556 U.S. at 682). If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 556.

**III. Analysis**

Ultimately, the parties' disagreement centers on whether the ETSA imposed a duty on telecommunication wholesalers prior to October 1, 2013. To answer this question, the court first examines the language of the ETSA. *See Hallstrom v. Tillamook Cty.*, 493 U.S. 20, 25 (1989) ("'[T]he starting point for interpreting a statute is the language of the statute itself.'"). If the statutory scheme of the ETSA is coherent and consistent, there is "no need for a court to inquire beyond the plain language" of the ETSA. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240 (1989). Furthermore, "[s]tatutory definitions such as the one found in § 11–98–1 must be scrupulously followed, and courts may not stray from or expand upon those definitions." *Madison Cty. Commc'ns Dist. v. CenturyLink, Inc.*, No. cv-12-J-1768-NE, 2012 WL 6685672, at *2 (N.D. Ala. Dec. 20, 2012).

Prior to October 1, 2013, the ETSA authorized ECDs to levy 911 charges in order to fund 911 services. *See* Ala. Code §§ 11-98-5, 5.1; *see also Madison Cty. Commc'ns Dist. v. MagicJack Vocaltec, Ltd*, No. cv-12-J-1922-NE, 2012 WL 12925761, at *1 (N.D. Ala. Oct. 23, 2012) ("The ETSA provide[d] funding for ECDs by assessing a charge on telephone services."). Specifically, under the Alabama Code:

> Every billed service user shall be liable for any service charge
> imposed under this subsection until it has been paid to the service

5

> supplier. The duty of the service supplier to collect the service charge shall commence upon the date of its implementation, which shall be specified in the resolution calling the election. That emergency telephone service charge shall be added to and may be stated separately in the billing by the service supplier to the service user.

Ala. Code § 11-98-5(c).

Service suppliers had duties to collect 911 charges from service users, remit 911 charges to ECDs, and provide ECDs with "a list of the amount uncollected, together with the names and addresses of those service users who carry a balance that can be determined by the service supplier to be nonpayment of the service charge." Ala. Code § 11-98-5(c), (d), (e). Service suppliers had "no obligation to take any legal action to enforce the collection of any emergency telephone service charge." *Id.* at § 11-98-5(d). The ETSA defined "service supplier" as "[a]ny person providing exchange telephone service to any service user throughout the county or municipality." *Id.* at § 11-98-1(7). It further defined "service user" as "[a]ny person, not otherwise exempt from taxation, who is provided exchange telephone service in the municipality or county." *Id.* at § 11-98-1(8).

In 2005, the Alabama Legislature amended the ETSA by adding § 11-98-5.1 in order to require "providers of VoIP to collect the E911 charge for each 10–digit access number assigned to a service user and to remit the charge to the appropriate communications district." *Madison Cty. Commc'ns Dist. v. Bellsouth Telecommc'ns, Inc.*, No. cv-06-S-1786-NE, 2009 WL 9087783, at *5 (N.D. Ala. Mar. 31, 2009). The pertinent part of § 11-98-5.1 provided,

> The emergency communication district fee authorized and levied in each district pursuant to Section 11-98-5 shall apply to all wired telephone service utilized within the district, including such service provided through Voice-Over-Internet Protocol (VoIP) or other similar technology. It shall be the duty of each provider of VoIP or

6

> similar service to collect the fee for each 10-digit access number assigned to the user and to remit such fee as provided in Section 11-98-5.

*Id.* at § 11-98-5.1(c). Plaintiff argues that, because Bandwidth is a provider of VoIP services and § 11-98-5.1(c) stated that "each provider of VoIP or similar service" had a duty to collect and remit 911 charges, Bandwidth had a duty as both a wholesaler and a retailer to collect and remit 911 charges to the District. (Doc. # 15 at p. 2). The court disagrees.

Section 11-98-5.1(c) did not alter the meaning of § 11-98-5; rather, § 11-98-5.1 was added to the ETSA in order to expand the Act to cover new technological developments, such as VoIP, and to prevent "VoIP users [from] 'free rid[ing]' off the 911 system." *See Madison Cty. Commc'ns Dist. v. Bellsouth Telecommc'ns, Inc.*, 2009 WL 9087783, at *5. Furthermore, the plain language of § 11-98-5.1(c) conveyed that a retailer -- not a wholesaler -- who provided VoIP services to an end-user had a duty to collect 911 charges from the VoIP service user and remit these charges to the ECD. *See* Ala. Code § 11-98-5.1(c) ("It shall be the duty of each provider of VoIP . . . to collect the fee for each 10-digit access number assigned to the user.").

A "commonsense interpretation" of the ETSA mandates that the duty to collect and remit 911 charges was only owed by telecommunications retailers, not by telecommunication wholesalers. *See Young Oil Co. v. Racetrac Petroleum, Inc.*, 757 So. 2d 380, 386 (Ala. 1999) (construing a statute based on a "commonsense" analysis rather than accepting an interpretation urged by the plaintiff that would undermine the purpose of the statute). The ETSA clearly stated that billed service users -- not service providers -- were liable for 911 charges.[3] *See* Ala. Code

---

[3] This interpretation is consistent with other rulings concerning the ETSA. *See Century Tel of Alabama, LLC v. Dothan/Houston Cty. Commc'ns Dist.*, 197 So. 3d 456, 458 (Ala. 2015) ("The telephone-service providers were required by the ETSA to collect the 911 charges from the telephone-service users and then to remit those 911 charges to the emergency-communications districts on a monthly basis."); *Autauga Cty. Emergency Mgmt.*

§ 11-98-5(c) ("Every billed service user shall be liable for any service charge imposed under this subsection until it has been paid to the service supplier."). The court agrees with Defendants that a holding that telecommunications wholesalers had a duty to collect 911 charges would create an unworkable and nonsensical structure. (Doc. # 16 at p. 4). If each wholesaler was required to collect and remit 911 charges from retailers and each retailer was also required to collect and remit 911 charges from end users of the telecommunications services, then 911 charges for some 10-digit access numbers would be subject to a double fee. In addition, no language in the ETSA suggests that wholesalers, such as Bandwidth's wholesale division, had an obligation to "contractually require its reseller customers to pay 911 Charges directly to the District" or, more broadly, that a telecommunications wholesaler was liable as the watchdog of its retail, non-user customers under the ETSA.[4] (Doc. # 1 at ¶ 19). Accordingly, the court finds that Count I of Plaintiff's Complaint does not state a plausible claim against Bandwidth as a wholesaler and this claim is due to be dismissed. *See Twombly*, 550 U.S. at 570.

**IV. Conclusion**

For the reasons outlined above, Defendants' Partial Motion to Dismiss Count I of Plaintiff's Complaint is due to be granted. As such, Count I (violation of the ETSA) of Plaintiff's Complaint is due to be dismissed without prejudice to the extent that the District seeks

---

*Commc'n Dist. v. Bellsouth Telecommc'ns, LLC*, No. 2:15-cv-00765-SGC, 2016 WL 5848854, at *1 (N.D. Ala. Oct. 6, 2016) ("The ETSA required service suppliers . . . to collect the emergency communication fee from each non-exempt customer with a ten-digit access number and remit the fees to the districts."); *Madison Cty. Commc'ns Dist. v. Bellsouth Telecommc'ns, Inc.*, No. cv-06-S-1786-NE, 2009 WL 9087783, at *2 (N.D. Ala. Mar. 31, 2009) ("Telephone 'service suppliers' have a duty under the Act to collect the E911 charge from service users, and then to remit it to the appropriate communications district on a monthly basis."); *Madison Cty. Commc'ns Dist. v. CenturyLink, Inc.*, No. cv-12-J-1768-NE, 2012 WL 6685672, at *2 (N.D. Ala. Dec. 20, 2012) ("The ETSA imposes a duty on 'service suppliers' to bill and collect 911 charges from telephone service users and then to remit those 911 charges to the District.").

[4] Furthermore, Plaintiff has not pointed to any language in the ETSA that establishes such a duty.

to impose liability on Bandwidth as a wholesaler and not in connection with Bandwidth's retail business. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this December 5, 2017.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE